STATE OF HAWAII, Plaintiff-Appellee, *v.* ALVIN DENNIS MORENO, Defendant-Appellant, and MORGAN BRUCE BOHOL, Defendant

NO. 9143

(CRIMINAL NO. 55621)

NOVEMBER 8, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a conviction of rape in the first degree in violation of HRS § 707-730(1)(a)(i). We reverse.

The indictment in question read as follows:

COUNT II: On or about the 19th day of October, 1980, in the City and County of Honolulu, State of Hawaii, ALVIN DENNIS MORENO did intentionally engage in sexual intercourse by forcible compulsion with Stephanie Lewis . . . .

Nine days after the incident in question, the victim gave a statement to the police (State's Exhibit 5) in which she stated that

Morgan put his penus [sic] into my vagina and kept laughing at me. I kicked him and wacked [sic] his friend. Then his friend Larry got a bottle and tryed [sic] to shove it into my vagina . . . .

"Morgan" was identified as co-defendant Morgan Bruce Bohol and "Larry" was identified as appellant. In the statement, she said Larry had held her down while Morgan raped her but she made no mention of Larry's having sexual intercourse (as distinguished from deviate sexual intercourse as those terms are defined in the penal code) with her.

Subsequently, Lenore Peterson, a counselor at the Sex Abuse Treatment Center, after consultation with the prosecuting attorney, came to the conclusion that the victim was suffering from a partial retrograde amnesia, and made arrangements for her to see a clinical psychologist. The psychologist, with Peterson present, conducted hypnotherapy sessions with the victim on January 27, February 5, February 17 and February 19, 1980. On February 20, 1980, the victim gave another statement to the police in which she stated that the appellant was the second one to rape her and that it was Morgan not the appellant who shoved the bottle in her vagina.

On April 21, 1981, the victim testified before the grand jury that appellant had placed his penis inside her vagina. The two-count indictment was returned that day. One count charged Bohol with rape consisting of sexual intercourse with the victim, the second was that quoted above.[1]

On June 4, 1982, appellant filed motions to suppress evidence and to dismiss the indictment, claiming that the victim was incompetent to testify as to any of the events dealt with in the hypnotherapy session. On November 24, 1982, the court below entered findings of fact, conclu-

---

[1]The prosecution apparently decided not to include an additional charge against appellant as an accomplice of Bohol's.

sions of law and an order denying the motions. Appellant was subsequently tried and convicted and this appeal followed.

Hypnosis of witnesses to expand or improve their memory of a crime is often used for three different purposes. (1) As an investigative technique to uncover more facts. (2) As a therapeutic and diagnostic tool to help the victim of a crime to recover from the effects thereof. (3) As a way to enhance the victim's recall for purposes of testimony. In the present case, the first and third purposes appear to have been the dominant reasons for the use of hypnosis.

The admissibility of hypnotically refreshed memory testimony by prosecution witnesses has been the subject of much legal debate. *See Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness,* Bernard L. Diamond, 68 Cal. L.Rev. 313 (1980); *Mesmerizing Justice: The Use of Hypnotically-Induced Testimony in Criminal Trials* by Ira Mickenberg, 34 Syracuse L.Rev. 927 (1983); and the monograph *Hypnotically Refreshed Testimony: Enhanced Memory or Tampering with Evidence,* Orne, Soskis, Dinges, Orne & Tonry, U.S. Dept. of Justice, National Institute of Justice, Office of Development, Testing and Dissemination, January 1985.

This is the first case in which we have been called upon to make a ruling on the issue. At least four rules, however, have been laid down in other states.

(1) Some states have ruled that the testimony is admissible, with the weight for the trier of the facts. Such a ruling was made in *Harding v. State,* 5 Md.App. 230, 246 A.2d 302 (1968) (since overruled).

(2) In New Jersey, a variant rule was adopted, under which the testimony was admissible provided that certain stringent criteria laid down by the court were met. *State v. Hurd,* 432 A.2d 86 (N.J. 1981).[2]

(3) The courts in certain states have permitted the witness to testify as to those facts which can be shown to have been recalled prior to hypnosis. *People v. Hughes,* 59 N.Y.2d 523, 453 N.E.2d 484, 466 N.Y.S.2d 255 (Ct. App. 1983); *Commonwealth v. Kater,* 388 Mass. 519, 447 N.Ed.2d 1190 (1983); *State v. Collins,* 132 Ariz. 180, 644 P.2d 1266 (1982).

---

[2]On a review of the record, it is apparent that the *Hurd* criteria were not met in this case.

(4) Finally, certain courts have ruled a witness incompetent to testify as to any matters covered during the hypnotic sessions regardless of prior recorded memory with respect thereto. *People v. Shirley,* 31 Cal.3d 18, 181 Cal. Rptr. 243, 641 P.2d 775 (1982).

It would serve no point for this court, inexpert as it is, to enter into a long discussion on the subject of the reliability of hypnotically induced testimony. Suffice it to say, the consensus of modern opinion is that such testimony is unreliable and, therefore, inadmissible.

On the other hand, the consensus of opinion is that hypnotherapy may be a valuable therapeutic and diagnostic tool. As the many cases on the issue demonstrate, sexual assault is the most common crime giving rise to these cases. We are unwilling to follow *Shirley, supra,* and adopt a bright line rule, which would require either, that the victim of such a crime forego the use of hypnotherapy for therapeutic purposes until the trial, or, that the State abandon the use of the victim's testimony in attempting to prosecute the crime.

As the New York court said in *Hughes, supra:*

A criminal trial for rape or assault would present an odd spectacle if the victim was barred from saying anything, including the fact that the crime occurred, simply because he or she submitted to hypnosis sometime prior to trial to aid the investigation or obtain needed medical treatment. Even in cases dealing with the frailties of eyewitness identifications some allowance must be made for the practicalities. [Citations omitted.]

466 N.Y.S.2d at 266.

We have no trouble in affirming the denial of the motion to dismiss the indictment. Nor do we have any trouble in affirming the refusal of the court below, on the motion to suppress, to hold that the victim was incompetent to testify as to all matters dealt with in the hypnotherapy sessions. However, it is apparent, in this case, that the victim's testimony that appellant had sexual intercourse with her, was an hypnotically induced recollection, and we therefore hold that that testimony was, *per se,* inadmissible.

We adopt the rule that a witness may testify as to matters which can be shown to have been recollected, by that witness, prior to hypnosis.[3]

---

[3]We recognize, as did the courts in New York, Massachusetts and Arizona, that separating the wheat of prior recollection, from the chaff of hypnotically induced recollec-

Reversed and remanded.

*Patrick M. Moscatello* for appellant.

*Willard Peterson* (*Shirley Smith* on the brief), Deputy Prosecuting Attorneys, for appellee.

---

tion, may be a difficult task for the trial court in any case and that circumstances will vary from case to case. We also recognize that in the event of the admission of such testimony, the defense may, on cross-examination and at its peril, go into the fact of hypnosis and the changed recollection resulting therefrom.